**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FRANKIE BRETON,

                    Plaintiff,                    17-cv-9247 (JGK)

          - against -                    MEMORANDUM OPINION &
                                         ORDER
CITY OF NEW YORK ET AL.,

                    Defendants.

---

**JOHN G. KOELTL, District Judge:**

The plaintiff, Frankie Breton, brings this action against
the defendants, the City of New York, Police Officer Steven
Clarke, Police Sergeant Freddy Cruz, Police Sergeant Edward
Cheek, and John Does 1-5, alleging claims of wrongful arrest and
detention; malicious prosecution; intentional infliction of
emotional distress ("IIED"); evidence manufacturing and the
denial of the right to a fair trial; failure to intervene;
negligent hiring, training, and supervision ("negligent
supervision"); and liability under Monell v. Department of
Social Services, 436 U.S. 658 (1978). The defendants answered
the plaintiff's first amended complaint ("FAC"), and now move
for judgment on the pleadings under Federal Rule of Civil
Procedure 12(c).

**I.**

The standards to be applied to a motion for judgment on the
pleadings pursuant to Federal Rule of Civil Procedure 12(c) are

the same as those applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006). "Thus, [a court] will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor. To survive a Rule 12(c) motion, [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Hayden v. Peterson</u>, 594 F.3d 150, 160 (2d Cir. 2010). In deciding such a motion, the court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that either are in the plaintiff's possession or were known to the plaintiff when the plaintiff brought suit, or matters of which judicial notice may be taken. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>see</u> <u>also</u> <u>D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.</u>, 116 F. Supp. 3d 349, 351 (S.D.N.Y. 2015).

## II.

The following facts are taken from the FAC and are accepted as true for purposes of this motion.

The plaintiff, Frankie Breton, was a student at New York University and an intern at a consulting firm located in Manhattan. FAC ¶¶ 1, 24. The plaintiff was dating Katherine

Tejada, who resided at 520 West 162nd Street in Manhattan, New York. Id. ¶¶ 13-14. Tejada shares a child with her ex-boyfriend, Manuel Matias. Id. ¶ 15.

Matias has a long criminal history. Id. ¶ 2. Beginning in early 2016, Matias began to abuse and harass Tejada. Id. ¶ 16. On February 13, 2016, Matias threatened to stab Tejada with a screwdriver. Id. ¶ 17. On August 11, 2016, Matias broke into Tejada's apartment by climbing the fire escape and entering through a window. Id. ¶ 18. On August 13, 2016, Matias physically assaulted Tejada when she returned home from work and attempted to steal Tejada's purse. Id. ¶ 19. Tejada filed domestic incident reports with the 33rd Precinct for each of these crimes. Id. ¶ 20. In response to Tejada's complaints, the New York Police Department ("NYPD") issued an "I-card," or "Wanted" card, for Matias to be arrested. Id. ¶ 21.

On August 23, 2016, Matias stalked the plaintiff and Tejada in upper Manhattan. Id. ¶ 22. The plaintiff called 911 to report the incident. Id. ¶ 23. The plaintiff and Tejada waited for the police to arrive, but because they feared for their safety, they left the scene and went to the 33rd Precinct where they filed another domestic incident report against Matias. Id.

The plaintiff began an internship with a consulting firm in Manhattan in October 2016. Id. ¶ 24. The internship would provide the plaintiff with enough academic credits to graduate

from New York University with a bachelor's degree. Id. On October 21, after leaving from the first day of his internship, the plaintiff took the subway to visit Tejada's apartment. Id. ¶ 25. Around the same time, Matias went to Tejada's apartment and began banging on Tejada's door. Id. ¶ 26. Tejada, who was inside the apartment, was terrified and dialed 911. Id. While on the 911 call, Tejada reported Matias's threatening conduct and informed the police that she believed she had a protective order against Matias. Id.

While Matias was banging on Tejada's door, the plaintiff entered the lobby of Tejada's apartment building. Id. ¶ 27. Matias saw the plaintiff and threatened "That's Homeboy! It's on!" Id. Matias then physically attacked the plaintiff by striking him numerous times with a closed fist. Id. While Matias attacked the plaintiff, the plaintiff backed out of the building onto the sidewalk. Id. ¶ 28. Matias then produced a knife and began slashing the plaintiff. Id. ¶ 29. The plaintiff suffered lacerations to his body and his right hand. Id.

The plaintiff feared for his life and attempted to disarm Matias. Id. ¶ 30. The plaintiff and Matias tumbled onto the sidewalk and Matias lost control of the knife on impact, which the plaintiff then picked up. Id. ¶ 31. Because the plaintiff was still scared for his life, he continued to back away from Matias. Id. ¶ 32. The plaintiff placed Matias's knife in his

pants pocket, and Matias chased him. Id. ¶ 33. Matias briefly stopped and unearthed a wooden support that was attached to a sapling, and then continued to chase the plaintiff while wielding the wooden support. Id. ¶ 34. The plaintiff ran away and dialed 911 to report Matias's attack. Id. ¶ 35. The plaintiff was also able to flag down a police car. Id. ¶ 36.

When the plaintiff explained to the police that he had been attacked by Matias, the police directed the plaintiff to get in the backseat of the police car. Id. ¶ 37. The police drove the plaintiff back to Tejada's apartment building. Id. While police drove the plaintiff to Tejada's apartment, another police car arrived in response to Tejada's earlier 911 call. Id. ¶ 38. It was difficult for the responding police officers to enter Tejada's apartment because Matias had banged the door so forcefully that the door was knocked off its hinges and wedged into the frame. Id. ¶ 39.

The plaintiff left the back of the police car when he reached Tejada's apartment building. Id. ¶ 41. Matias saw the plaintiff and began screaming, "That's him!" Id. ¶ 42. One of the defendants, Police Officer Cruz, asked the plaintiff if he stabbed Matias. Id. ¶ 43. The plaintiff showed Officer Cruz his right hand, which was bleeding from Matias's knife attack, and responded, "No, he stabbed me." Id. ¶ 44. Officer Cruz searched the plaintiff and found Matias's knife in the plaintiff's

pocket. Id. ¶ 45. The plaintiff continued to explain that Matias had stabbed him and that he obtained the knife by disarming Matias. Id. ¶ 46.

Other witnesses also confirmed Matias's guilt and the plaintiff's innocence. Tejada, who was inside her apartment, told Police Officer Clarke several times that she had an order of protection against Matias, that Matias was the subject of several domestic incident reports, and that Matias had been pounding on her door. Id. ¶ 47. Officer Clarke asked Tejada for a description of Matias. Id. ¶ 48. Tejada explained that Matias was bald and had green eyes. Id. This description would have made it clear that the plaintiff was not the perpetrator because the plaintiff had short hair and brown eyes. Id. ¶ 49.

A woman who witnessed the fight between Matias and the plaintiff also identified Matias as the person who wielded the knife. Id. ¶¶ 50-51. This woman reported her observations to Police Officer Grove, who is not named as a defendant. Id. ¶ 51. Officer Grove relayed the eyewitness's observations to other officers at the scene, including Sergeant Cruz. Id. ¶ 52.

Despite Matias's status as a criminal who was wanted by the 33rd Precinct, Tejada's description of Matias, the eyewitness's identification of Matias, the plaintiff's protestations of innocence, and the plaintiff's open wound on his right hand, Officers Clarke and Cruz placed the plaintiff under arrest for

assaulting Matias. Id. ¶¶ 44, 46-54. The plaintiff alleges that
virtually all of the officers on the scene were aware of the
information that exculpated the plaintiff and inculpated Matias,
yet none of the officers intervened to stop Officer Clarke and
Sergeant Cruz from arresting the plaintiff. Id. ¶ 54.

Matias was taken to the 33rd Precinct to provide a
statement. Id. ¶ 55. Based on Matias's assertions, the police
charged the plaintiff with Attempted Assault in the First Degree
-- a felony under New York Penal Law §§ 110 and 120.10(1). Id.
Officer Clarke then prepared arrest and felony complaint reports
that falsely stated that the plaintiff slashed Matias in the
head with a knife, that the plaintiff and Matias were strangers,
and that there were no prior Domestic Incident Reports filed
against Matias. Id. ¶¶ 56-57. Sergeant Cheek approved these
reports to be filed and presented to the New York County
District Attorney's Office -- a necessary step to bring a formal
criminal prosecution against the plaintiff. Id. ¶ 56.

The reports and felony complaint prepared by Officer Clarke
omitted evidence that suggested the plaintiff's innocence and
inculpated Matias, including that: (1) Matias was wanted for
criminal charges based on his repeated abuse and harassment of
Tejada and the plaintiff, (2) the plaintiff was Tejada's current
boyfriend, (3) Matias was Tejada's ex-boyfriend, (4) the
plaintiff and Matias knew each other, (5) the incident involved

7

a domestic dispute, (6) an eyewitness identified Matias as the aggressor and as the person who possessed the knife, (7) both Tejada and the plaintiff called 911 to report Matias's conduct, (8) the plaintiff had injuries that corroborated the plaintiff's account of being attacked by Matias with a knife, and (9) Matias did not have a single injury supporting his claim that the plaintiff attacked him with a knife. Id. ¶¶ 58-59. Neither Officer Clarke nor any other police officer conveyed these exculpating details to the District Attorney's Office. Id. ¶ 61.

The plaintiff was processed for a criminal offense. Id. ¶ 62. While in custody, the police failed to provide the plaintiff with the opportunity to receive sutures in his hand, which was still bleeding from being slashed by Matias. Id. ¶ 65. Unlike the plaintiff, Matias was allowed to leave the precinct, even though the 33rd Precinct's detective squad had issued an active "Wanted" card to arrest Matias. Id. ¶ 62. The plaintiff was arraigned in New York City Criminal Court, New York County, the next day. Id. ¶ 64.

Officer Clarke visited Tejada's apartment on October 22, 2016 -- the date of the plaintiff's arraignment -- and apologized for arresting the plaintiff and for releasing Matias without ascertaining that there was an active "Wanted" card issued for Matias. Id. ¶ 66. Officer Clarke told Tejada that Matias was wanted in the 33rd Precinct but that Matias had been

released without a pedigree check. Id. ¶ 67. The plaintiff was released on his own recognizance after his arraignment, and his case was adjourned until December 24, 2017 for Grand Jury action. Id. ¶ 64.

The plaintiff's hand was still bleeding when he was released from custody. Id. ¶ 65. Accordingly, he went to New York Presbyterian Hospital for treatment. Id. Doctors told the plaintiff that his wound needed sutures but that sutures could no longer be used because of the age of the injury. Id.

The plaintiff appeared in New York Criminal Court on December 14, 2016, at which time the case was again adjourned. Id. ¶ 68. On January 27, 2017, after a prosecutor investigated the charges against the plaintiff, the District Attorney's Office moved to dismiss all charges against the plaintiff. Id. ¶ 69. The court granted the prosecutor's motion that same day and dismissed the case against the plaintiff as one of self-defense. Id.

The plaintiff brought this action claiming wrongful arrest and detention, malicious prosecution, IIED, evidence manufacturing and the denial of the right to a fair trial, failure to intervene, negligent supervision, and liability under Monell, 436 U.S. 658 (1978). The plaintiff alleges damages based on his nearly twenty-one hours of incarceration; the restriction of his liberty through his incarceration and the multiple court

appearances he was required to make to defend against the false charges; and resulting damages. Id. ¶ 70.

III.

The defendants move for judgment on the pleadings dismissing all of the plaintiff's claims.

A.

As a threshold matter, the defendants argue that the plaintiff's state law claims for false arrest, IIED, actual and constructive fraud, and negligent supervision are time-barred because the plaintiff did not comply with New York General Municipal Law § 50-e, which requires that plaintiffs bringing tort actions against a municipality or its officers serve a notice of the claims on the defendants within ninety days of the date that the claims accrue. N.Y. Gen. Mun. Law § 50-e; Adams v. City of New York, No. 08cv5263, 2010 WL 743956, at *7 (S.D.N.Y. 2010). "Where a plaintiff fails to timely file a notice of claim, his complaint will be dismissed." Gaston v. N.Y.C. Dep't of Health Office of Chief Med. Exam'r, 432 F. Supp. 2d 321, 326 (S.D.N.Y. 2006).

The plaintiff filed a notice of claim in this case on April 18, 2017. The defendants argue that the claim for false arrest accrued on October 22, 2016, when the plaintiff was released from custody, and therefore the notice of claim was due by January 20, 2017. The plaintiff only responds with respect to

10

his IIED and negligent supervision claims. Accordingly, the plaintiff's state law claims for false arrest and actual and constructive fraud are **dismissed.**[1]

The plaintiff argues that he complied with § 50-e with respect to his IIED claim because IIED is a continuing tort and IIED claims do not accrue until the date of the last overt act causing injury. The plaintiff alleges that the defendants engaged in outrageous conduct that injured the plaintiff until at least January 2017 by misleading the prosecutors who led the criminal proceeding against the plaintiff.

The continuing tort doctrine applies to claims of IIED under New York State law. Barone v. United States, No. 12cv4103, 2016 WL 2658174, at *2 (S.D.N.Y. May 5, 2016); Geiger v. E.I. DuPont Nemours & Co., Inc., No. 96cv2757, 1997 WL 83291, at *11 (S.D.N.Y. 1997) ("New York law does recognize the continuing tort theory, especially in the context of intentional infliction of emotional distress."). Therefore, "claims for IIED that allege a continuing pattern and practice of actionable behavior may invoke the continuing tort doctrine to provide an exemption from the statute of limitations where the last actionable act of the alleged course of conduct falls within the statute of limitations." Barone, 2016 WL 2658174, at *2 (quotation marks

---

[1] The defendants do not state when the plaintiff's fraud claim accrued, but because the plaintiff does not attempt to defend the fraud claim as timely, it must be dismissed.

omitted). The defendants do not dispute that the plaintiff's IIED claim continued into January 2017, and accordingly, the defendants' motion for judgment dismissing the plaintiff's IIED claim for failure to comply with New York General Municipal Law § 50-e is **denied.**

The plaintiff argues that his negligent supervision claim did not accrue until January 27, 2017 -- the date on which he was required to appear in court to defend himself against criminal charges and when the charges against the plaintiff were dismissed. Negligent hiring and supervision claims "accrue from the date of the alleged torts." See Figueroa v. City of New York, 880 N.Y.S.2d 223, 223 (App. Div. 2009); Pichardo v. N.Y.C. Dep't of Educ., 953 N.Y.S.2d 31, 32 (App. Div. 2012) ("[N]egligent supervision and hiring . . . claims accrue[] on the date of the last alleged underlying act."). The plaintiff's negligent supervision claim is based on the alleged malicious prosecution. The claim for malicious prosecution did not accrue until the charges against the plaintiff were dismissed on January 27, 2017. See McDonough v. Smith, 898 F.3d 259, 267 (2d Cir. 2018) ("[W]e have long held that malicious prosecution claims brought pursuant to § 1983 do not accrue until the underlying criminal proceedings against the plaintiff terminate in his favor."), rev'd on other grounds, 139 S. Ct. 2149 (2019); Ferrick v. City of New York, 489 N.Y.S.2d 491, 492 (App. Div.

1985). The plaintiff filed his notice of claim within ninety days of that date, and accordingly, the claim was timely and the negligent supervision claim as it relates to that tort may proceed.

The defendants also argue that the negligent supervision claim should be dismissed because negligent supervision claims can only be maintained for actions outside the scope of the defendants' employment. See Peterec v. Hilliard, No. 12cv3944, 2013 WL 5178328, at *13 (S.D.N.Y. Sept. 16, 2013) ("Under New York law, a claim for negligent hiring or retention 'can only proceed against an employer for an employee acting outside the scope of her employment.'" (quoting Newton v. City of New York, 681 F. Supp. 2d 473, 488 (S.D.N.Y. 2010))). The defendants base their argument on the express allegation in the FAC that the defendants acted within the scope of their employment. See FAC ¶ 103 (alleging that the defendants acted "within the scope of [their] employment").

However, the Court need not accept the plaintiff's conclusion that the defendants were acting within the scope of their employment as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("The tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."). Some New York courts have held that fabricating and forwarding misleading evidence to prosecutors

falls outside of the scope of an officer's employment. <u>See</u>
<u>Prentice v. State</u>, 791 N.Y.S.2d 873, 873 (Ct. Cl. 2004)
("[N]either the act of fabrication, nor the giving of perjured
testimony, can be found to be acts which are commonly done by
such employees within their normal scope of employment. These
actions represent such a gross departure from acceptable police
conduct that they cannot be considered as furthering the State's
interest."); <u>Kinge v. State</u>, 859 N.Y.S.2d 323, 329 (Ct. Cl.
2007) (same), <u>aff'd</u>, 915 N.Y.S.2d 186 (App. Div. 2010). Other
courts treat the question whether the officers acted in the
scope of their employment as one of fact. <u>See Coggins v. Cty. of</u>
<u>Nassau</u>, 988 F. Supp. 2d 231, 249 (E.D.N.Y. 2013), <u>aff'd in part,</u>
<u>appeal dismissed in part sub nom.</u> <u>Coggins v. Buonora</u>, 776 F.3d
108 (2d Cir. 2015) (Allegations that officers fabricated charges
and evidence "plausibly suggest[ed] that the officers acted in
their own personal interest" and outside the scope of their
employment.). Accordingly, whether the defendants acted within
the scope of their employment is a question that cannot be
resolved on this motion.

**B.**

The plaintiff brings claims of wrongful arrest against all
of the individual defendants under 42 U.S.C. § 1983 and New York
State law, arguing that it was unlawful for the individual
defendants to arrest and detain the plaintiff without probable

14

cause and in the face of overwhelming evidence that he was
innocent.

A false arrest claim under § 1983 resting on the Fourth
Amendment right to be free from unreasonable seizures, including
arrest without probable cause, "is substantially the same as a
claim for false arrest under New York law." Weyant v. Okst, 101
F.3d 845, 852 (2d Cir. 1996) (citations omitted). Accordingly,
"a plaintiff claiming false arrest must show, inter alia, that
the defendant intentionally confined him without his consent and
without justification." Id. (citations omitted). Probable cause
constitutes such justification, and therefore probable cause "is
a complete defense to an action for false arrest." Bernard v.
United States, 25 F.3d 98, 102 (2d Cir. 1994); Jocks v.
Tavernier, 316 F.3d 128, 135 (2d Cir. 2003); L.B. v. Town of
Chester, 232 F. Supp. 2d 227, 233 (S.D.N.Y. 2002); see also
Bullard v. City of New York, 240 F. Supp. 2d 292, 297 (S.D.N.Y.
2003).

The defendants argue that the plaintiff's wrongful arrest
claim should be dismissed because, based on the facts alleged in
the FAC, the defendants had probable cause to arrest the
plaintiff. Probable cause to arrest exists "when the arresting
officer has knowledge or reasonably trustworthy information
sufficient to warrant a person of reasonable caution in the
belief that an offense has been committed by the person to be

arrested." <u>Singer v. Fulton Cty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995) (quotation marks omitted). The defendants argue that probable cause existed based on the allegations that Matias identified the plaintiff as the aggressor and that Sergeant Cruz found a knife in the plaintiff's right pocket.

The defendants' argument fails to take into account the exculpatory circumstances alleged by the plaintiff that would vitiate a finding of probable cause. "Information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated. Yet, even if bystander witnesses are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause." <u>Oliveira v. Mayer</u>, 23 F.3d 642, 647 (2d Cir. 1994) (citations omitted). The Second Circuit Court of Appeals has explained that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest <u>absent circumstances that raise doubts as to the victim's veracity.</u>" <u>Singer</u>, 63 F.3d at 119 (emphasis added). The plaintiff has alleged circumstances that raise such doubts.

The defendants' argument fails to account for the myriad indicia of unreliability alleged by the plaintiff, which are presumed to be true on a motion for judgment on the pleadings,

including that (1) the plaintiff had injuries on his hand that
were consistent with the plaintiff's account of being attacked;
(2) Matias, who was wanted for criminal acts, had a history of
committing crimes against Tejada and the plaintiff; (3) Tejada
and the plaintiff had both dialed 911 to report Matias moments
before the plaintiff's arrest; (4) the plaintiff had initiated
contact with the police regarding the attack, including by
flagging down a police car; (5) an eyewitness identified Matias
as the aggressor; and (6) Matias had no injuries supporting his
claim that the plaintiff attacked him.

   The defendants also argue that they were not required to
investigate the plaintiff's protestations of innocence. Although
it is true that police officers do not have an independent "duty
to investigate an exculpatory statement of the accused,"
Mistretta v. Prokesch, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998), a
"police officer may not close her or his eyes to facts that
would help clarify the circumstances of an arrest." Tretola v.
Cty. of Nassau, 14 F. Supp. 3d 58, 73 (E.D.N.Y. 2014) (quotation
marks omitted). "Of particular relevance, the courts have
stressed that, in determining whether an arrest is justified, an
officer may not disregard plainly exculpatory evidence." Yang
Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 386
(S.D.N.Y. 2009) (citing Kerman v. City of New York, 261 F.3d
229, 241 (2d Cir. 2001)). The plaintiff alleges adequately that

the defendants turned a blind eye to evidence that was known to them.

The defendants argue in the alternative that if there was not probable cause to arrest the plaintiff, there was at least "arguable probable cause," such that the defendants are entitled to qualified immunity against the plaintiff's wrongful arrest claims. However, based on the facts alleged in the FAC, there were sufficient circumstances to negate probable cause, and therefore the defendants are not entitled to qualified immunity at this stage. See, e.g., Golio v. City of White Plains, 459 F. Supp. 2d 259, 263-64 (S.D.N.Y. 2006).

Finally, the defendants argue that the complaint does not sufficiently allege that Sergeant Cheek was personally involved in the arrest or that Sergeant Cheek was even present at the arrest scene. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (quotation marks omitted). In response to the defendants' assertion that there are no facts in the FAC that place Sergeant Cheek at the scene of the plaintiff's arrest or show that Sergeant Cheek was otherwise involved in the arrest, the plaintiff points to FAC ¶¶ 54, 56, 107, and 112. Those paragraphs, however, do not allege that Sergeant Cheek was involved in the arrest. Paragraph

54 does not mention Sergeant Cheek, ¶ 56 states that Sergeant Cheek approved the arrest reports but does not state that Sergeant Cheek was present during the arrest, and ¶ 107 does not discuss the arrest scene but rather alleges that the defendants fabricated evidence.

Paragraph 112 comes the closest to alleging that Sergeant Cheek was at the arrest scene. Paragraph 112 refers to "[d]efendants, who were present at the scene." "However, complaints that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'" Leneau v. Ponte, No. 16cv776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018), appeal dismissed (July 16, 2018) (citation omitted). It is not sufficient for a plaintiff to "lump[] the three defendants together without pleading facts demonstrating what each did that makes him liable" for the plaintiff's claims. See Myers v. Moore, 326 F.R.D. 50, 60 (S.D.N.Y. 2018). Accordingly, the FAC fails to allege sufficiently that Sergeant Cheek was present for or involved in the plaintiff's arrest, and the false arrest claim against Sergeant Cheek is **dismissed.**

### C.

The plaintiff also brings claims of malicious prosecution and deprivation of liberty under § 1983 and New York State law on the basis that the defendants initiated criminal proceedings

against the plaintiff without probable cause and with actual malice. To bring a claim of malicious prosecution, a plaintiff must plead "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." <u>Shabazz v. Kailer</u>, 201 F. Supp. 3d 386, 391–92 (S.D.N.Y. 2016) (quotation marks omitted). The defendants argue that the plaintiff's malicious prosecution claims should be dismissed on the bases that the defendants did not "initiate" the prosecution, that the plaintiff has not pleaded a favorable termination of the prosecution, that there was probable cause for the prosecution, and that the defendants are entitled to qualified immunity.

First, the defendants argue that the plaintiff has not pleaded that the defendants "initiated" the prosecution because there is a presumption that prosecutors exercise their own independent judgment in deciding whether to bring a criminal case. Although "there is a presumption that a prosecutor exercises independent judgment in deciding whether to bring a criminal case, a police officer can be liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." <u>Rogers v. Bisono</u>, No. 15cv6670,

20

2016 WL 4224072, at \*3 (S.D.N.Y. Aug. 9, 2016) (quotation marks omitted). "Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) (quoting United States v. Agurs, 427 U.S. 97, 104 (1976)). The plaintiff alleges adequately that the defendants forwarded misleading evidence to the District Attorney's Office in order for the District Attorney to commence criminal proceedings against the plaintiff. See, e.g., FAC ¶ 2 (alleging that the "[p]olice then forwarded . . . false reports to the New York County District Attorney's Office, convincing that Office to commence formal criminal proceedings against Breton").

Next, the defendants argue that the plaintiff has not pleaded that the criminal prosecution ended in a favorable termination. "Malicious prosecution suits require, as an element of the offense, the termination of the proceeding in favor of the accused." Poventud v. City of New York, 750 F.3d 121, 130 (2d Cir. 2014) (quotation marks omitted). The defendants argue that in order for a termination to qualify as favorable, the termination must affirmatively indicate that the accused is innocent of the charges brought.

"The matter of whether the prosecution's effective abandonment of a prosecution, resulting in a termination 'with prejudice' and thus foreclosing a new prosecution of the accused on the same charges, constitutes a termination favorable to the accused for purposes of a malicious prosecution claim generally depends on the cause of the abandonment." Murphy v. Lynn, 118 F.3d 938, 949 (2d Cir. 1997). "A termination is not favorable, for example, where a prosecution ends because of a compromise with the accused, or where the accused's own misconduct frustrates the prosecution's ability to proceed with the case." Myers v. Rowell, No.15cv0553, 2017 WL 2559994, at *3 (N.D.N.Y. June 13, 2017). In this case, the District Attorney moved to dismiss the charges against the plaintiff on the basis that the plaintiff was innocent and had acted in self-defense, and the state court dismissed the charges that same day.

New York courts hold that where a prosecutor investigates charges "and elect[s] not to proceed with the charges because . . . the allegations against the plaintiff [a]re not supported by the evidence," the termination is favorable. See, e.g., Verboys v. Town of Ramapo, 785 N.Y.S.2d 496, 497 (App. Div. 2004); Smith-Hunter v. Harvey, 734 N.E.2d 750, 754 (N.Y. 2000) ("A dismissal . . . qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the public prosecutor." (quotation marks

omitted)); see also Stampf v. Long Island R.R. Co., 761 F.3d 192, 200-01 (2d Cir. 2014) (holding that a plaintiff demonstrated favorable termination where a prosecutor declined to pursue charges because the case could not be proven beyond a reasonable doubt). In this case, the prosecutor abandoned the charges against the plaintiff because the prosecutor determined that the plaintiff was innocent. These allegations are sufficient to state a claim that the termination was favorable.

The defendants also argue for judgment dismissing the plaintiff's malicious prosecution claims on the basis that there was probable cause for the prosecution, and that in the alternative, there was arguable probable cause that would entitle the defendants to qualified immunity. However, as explained above, there are issues of fact as to whether there was probable cause to arrest the plaintiff in the first instance. Those same issues of fact preclude the defendants' argument that there was probable cause to prosecute. Indeed, the "probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Stansbury v. Waterman, 721 F.3d 84, 95 (2d Cir. 2013).

However, the plaintiff has not sufficiently alleged a malicious prosecution claim against Sergeant Cheek. Because there are no allegations that Sergeant Cheek was involved in or present for the plaintiff's arrest, there are no facts alleged

to show plausibly that Sergeant Cheek was aware that the arrest and complaint reports -- which he approved -- contained false or misleading information regarding the circumstances of the plaintiff's arrest. Accordingly, the defendants' motion for judgment dismissing the plaintiff's malicious prosecution claim is **granted** with respect to Sergeant Cheek but is **denied** with respect to the remaining individual defendants.

**D.**

The plaintiff also brings claims against the individual defendants for failure to intervene to stop the arrest and prosecution of the plaintiff.

The defendants argue that the Court should dismiss the failure to intervene claims against Sergeant Clarke and Officer Cruz because the plaintiff alleges that these defendants directly participated in both the arrest and the prosecution and therefore could not have intervened. However, the plaintiff is allowed to plead in the alternative. See VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F. Supp. 2d 435, 443 (S.D.N.Y. 2001). Federal Rule of Civil Procedure 8(d) states that a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Moreover, the alternative claims need not be consistent. "A

party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Accordingly, the defendants' motion for judgment dismissing the failure to intervene claims against Sergeant Cruz and Officer Clarke is **denied.**

The defendants also argue that the failure to intervene claims should be dismissed with respect to Sergeant Cruz because there is no evidence that Sergeant Cruz was aware that the information forwarded to the prosecutor was false or misleading. However, the plaintiff alleges that Sergeant Cruz was present for the arrest and that he acted in concert with the other individual defendants to fabricate evidence. FAC ¶¶ 43, 107. These facts are sufficient to create a plausible inference that Sergeant Cruz knew that the reports contained misstatements and omissions.

Finally, the defendants argue that the failure to intervene claims should be dismissed against Sergeant Cheek because the FAC does not allege that Sergeant Cheek was present at the arrest scene. The defendants are correct. Because the FAC does not allege that Sergeant Cheek was present for the arrest, Sergeant Cheek could not have intervened to stop the arrest. Moreover, because Sergeant Cheek was not alleged to have witnessed the arrest, none of the facts alleged give rise to a plausible inference that Sergeant Cheek knew that the

information forwarded to the prosecutor was false or misleading. Therefore, the failure to intervene claim against Sergeant Cheek is **dismissed.**

**E.**

Based on the allegations that the individual officers created false police and felony complaint reports that omitted exculpatory information, the plaintiff also brings a claim that the defendants fabricated evidence and thus violated his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments.

To bring a fair trial claim based on the fabrication of evidence, the plaintiff must plead a case in which "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Bridgeforth v. City of New York, No. 16cv273, 2018 WL 3178221, at *7 (S.D.N.Y. June 28, 2018) (quotation marks omitted).[2]

The defendants move for judgment dismissing this claim on the grounds that (1) the plaintiff engaged in group pleading and the FAC does not contain enough specific allegations about the

_____

[2] The Supreme Court recently held that a claim for the denial of a fair trial based on fabricated evidence does not accrue until the criminal proceedings terminate in favor of the plaintiff. See McDonough v. Smith, 139 S. Ct. 2149, 2161 (2019). As explained above, the plaintiff has sufficiently alleged that the criminal proceeding terminated in his favor.

defendants individually and (2) there are no allegations that Officer Clarke fabricated evidence, but only that he merely omitted exculpatory evidence from the criminal complaint.

The defendants' argument that there are no individualized allegations against all of the defendants is incorrect. Paragraph 107 of the FAC alleges that Officer Clarke, Sergeant Cruz, and Sergeant Cheek each participated in the fabrication of evidence and the creation of police reports that omitted exculpatory evidence. Paragraph 109 states that these defendants forwarded the misleading evidence to the prosecutors, who then relied on the reports to bring criminal charges against the plaintiff.

The defendants also argue that the plaintiff's fair trial claim against Officer Clarke fails because the FAC does not allege that Officer Clarke fabricated evidence but that he merely omitted evidence from the police reports. The plaintiff alleges that the complaint report, which was signed by Officer Clarke under penalty of perjury, omitted facts that the plaintiff believes were exculpatory. For example, the plaintiff alleges that Officer Clarke failed to provide the District Attorney's Office with information that the plaintiff and Tejada were dating, that Matias was Tejada's ex-boyfriend, or that the plaintiff had injuries that were consistent with the plaintiff's assertion that he was the victim.

The distinction between affirmative misrepresentations and omissions is not material to the plaintiff's fair trial claim. "Information may be 'false' if material omissions render an otherwise true statement false." <u>Morse v. Fusto</u>, 804 F.3d 538, 548 (2d Cir. 2015); <u>Bridgeforth</u>, 2018 WL 3178221, at *7. The plaintiff alleges that the omissions were material to the prosecution against him because the facts omitted negated probable cause and established the plaintiff's innocence.

The defendants argue, in a conclusory fashion, that none of the omissions were material to the prosecution. The defendants are plainly incorrect. For example, the fact that the plaintiff's hand was injured in a way that was consistent with his claim of innocence was undoubtedly relevant to whether there was probable cause to arrest and prosecute the plaintiff. Moreover, the plaintiff alleges that when the prosecutor investigated the events -- and presumably discovered the omitted facts -- the prosecutor moved to dismiss the case as one of self-defense. Accordingly, the FAC has pleaded sufficiently that the omissions were both misleading and material.

**F.**

The plaintiff brings a claim under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), against the City of New York, alleging that the NYPD's policies and training regarding (1) the determination of probable cause to make an arrest; (2)

the duty not to use false, misleading, or unreliable evidence;
and (3) the continuing duty of police officers to disclose
exculpatory evidence to the prosecutor under Brady v. Maryland,
373 U.S. 83 (1963), were insufficient to protect the plaintiff's
constitutional rights. To support his Monell claim, the
plaintiff attaches to the FAC a list of fifteen cases in which
the plaintiff claims courts ruled that NYPD officers either
withheld evidence or knowingly gave false or misleading
testimony. The plaintiff also lists forty-five malicious
prosecution lawsuits against the City of New York that were
settled by the parties. The plaintiff also refers to media
coverage regarding New York Police officers lying, and the
Mollen Commission Report -- a 1994 New York City government
report regarding corruption in the NYPD.

To bring a claim against a municipality under § 1983, the
plaintiff must allege that the challenged conduct was "performed
pursuant to a municipal policy or custom." Patterson v. Cty. of
Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004); Sorlucco v.
N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992); see
generally Monell, 436 U.S. at 669. To identify a "policy or
custom," the plaintiff must demonstrate that the municipality,
through its deliberate conduct, was the "moving force" behind
the injuries alleged. Bd. of Cty. Comm'rs v. Brown, 520 U.S.
397, 404 (1997). The alleged policy does not need to be

contained in an explicitly adopted rule so long as the unlawful practices of city officials are so "persistent and widespread . . . as to constitute a custom or usage with the force of law." Sorlucco, 971 F.2d at 870 (quotation marks omitted); see Connick v. Thompson, 563 U.S. 51, 61 (2011) (stating that the acts of city officials must be "so persistent and widespread as to practically have the force of law"); see also Viruet v. City of New York, No. 16cv8327, 2019 WL 1979325, at *8 (S.D.N.Y. May 3, 2019).

The plaintiff can satisfy the "policy or custom" requirement by alleging

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Tieman v. City of Newburgh, No. 13cv4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quotation marks omitted). In this case, the plaintiff alleges both that the NYPD implemented inadequate policies and that the Police Commissioner breached a duty to implement policies and training to prevent officers from

violating the constitutional rights of the plaintiff and others.
See FAC ¶¶ 118, 123.

1.

As to the plaintiff's allegation that the NYPD implemented "plainly inadequate" policies, the plaintiff must "identify a municipal 'policy' or 'custom'" for such a claim to survive. Brown, 520 U.S. at 403 (citing Monell, 436 U.S. at 694). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403-04. However, the plaintiff does not point to a single policy or explain how the existing policies are inadequate.

Moreover, the evidence on which the plaintiff relies is insufficient to support a plausible inference that the NYPD's policies and customs were inadequate at the time of the plaintiff's injuries. The plaintiff's reliance on the Mollen Commission Report is unavailing. See Isaac v. City of New York, No. 16cv4729, 2018 WL 5020173, at *17 (E.D.N.Y. Aug. 6, 2018). Although research reports can be used to support Monell claims, see id., the plaintiff was arrested twenty-two years after the issuance of the Mollen Commission Report. Research reports only support a plaintiff's Monell claims "if those reports are sufficiently connected to the specific facts of the case and are

of relatively recent vintage." Id. (quotation marks omitted).
The plaintiff has failed to plead facts indicating that the
deficiencies raised in the Mollen Commission Report caused the
alleged deprivations of his own rights. See Tieman, 2015 WL
1379652, at *23 (explaining that a plaintiff's Monell claim was
insufficiently pleaded in part because the plaintiff had not
"pleaded any facts suggested that an alleged training deficiency
caused his constitutional injury").

    Nor are the fifteen lawsuits on which the plaintiff relies
sufficient to allege an inadequate NYPD policy. Judgments were
issued in only three of these lawsuits -- Ismail v. Cohen, 899
F.2d 183 (2d Cir. 1990); Hart v. City of New York, 588 N.Y.S.2d
1012 (App. Div. 1992); and Maxwell v. New York, 554 N.Y.S.2d 502
(App. Div. 1990) -- and those judgments were reached more than
twenty-five years ago. See Tieman, 2015 WL 1379652, at *17 ("The
lawsuits cited by Plaintiff in the [proposed amended complaint]
. . . are insufficient to plausibly support an inference of
widespread custom. To begin, even if the civil complaints
involved comparable conduct to that alleged here, none
result[ed] in an adjudication of liability." (quotation marks
omitted)). The most recent of the cases on which the plaintiff
relies was decided in 2010, and the oldest was decided in 1985.
The plaintiff has not alleged how the allegations in these cases
are related to his case, which occurred years later. Moreover,

the "paltry number of complaints . . . spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a Monell claim." See Walker v. City of New York, No. 12cv5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (holding that a plaintiff's reliance on ten civil complaints was insufficient to support the existence of a policy or a widespread custom); see Felix v. City of New York, 344 F. Supp. 3d 644, 659 (S.D.N.Y. 2018) (holding that a plaintiff's "citation to 10 civil rights complaints over the course of 30 years [did not] sufficiently move[] the plausibility needle in [the plaintiff's] favor").[3] The FAC contains no factual allegations indicating, for example, that NYPD officers fabricate evidence, omit exculpatory evidence, or conduct arrests without probable cause "in a substantial proportion of arrests they conduct." See Walker, 2014 WL 1259618, at *3.

Moreover, the plaintiff cannot rely on the list of settled cases attached to the FAC as evidence of an insufficient policy under Monell. There are many circumstances that factor into a litigant's decision to settle a case. These settlements do not support the plaintiff's Monell claim because whether these cases settled based on the merits of the plaintiffs' claims or based

---

[3] The court found insufficient allegations to support a custom or practice of using excessive force against emotionally disturbed persons but did find sufficient allegations to support a claim that police officers had received insufficient training to deal with emotionally disturbed persons.

on other factors is only within the relevant litigants'
knowledge.

Accordingly, the plaintiff's allegation that the NYPD's
policies were inadequate is **dismissed.**

**2.**

The plaintiff also alleges that the NYPD's training was
insufficient to protect the constitutional rights of the
plaintiff and others. The Supreme Court has explained that "[a]
municipality's culpability for a deprivation of rights is at its
most tenuous where a claim turns on a failure to train."
Connick, 563 U.S. at 61. It is "only where a [p]laintiff can
demonstrate that a municipality's failure to train amounts to
deliberate indifference to the rights of those with whom
municipal employees will come into contact" that plaintiff's
failure to train claim will be actionable under Monell. See
Peterec, 2013 WL 5178328, at *11 (quotation marks omitted).

In order for the plaintiff to sufficiently plead deliberate
indifference, the plaintiff must allege that: (1) "a policymaker
knows 'to a moral certainty' that her employees will confront a
given situation," (2) "the situation either presents the
employee with a difficult choice of the sort that training or
supervision will make less difficult or that there is a history
of employees mishandling the situation," and (3) "the wrong
choice by the city employee will frequently cause the

deprivation of a citizen's constitutional rights." <u>Walker v.</u>
<u>City of New York</u>, 974 F.2d 293, 297-98 (2d Cir. 1992) (citations
omitted).

It "is unlikely that a plaintiff would have information
about the city's training programs or about the cause of the
misconduct at the pleading stage." <u>See</u> <u>Amnesty Am. v. Town of W.</u>
<u>Hartford</u>, 361 F.3d 113, 130 n.10 (2d Cir. 2004) (Sotomayor, J.).
Accordingly, courts have upheld failure to train claims when
plaintiffs list similar civil rights complaints that support a
plausible inference that the City had a training deficiency of
which it was aware. <u>See, e.g.</u>, <u>Felix</u>, 344 F. Supp. 3d at 661-62.
Moreover, "there is no requirement that complaints result in a
formal finding of misconduct for such complaints to support
findings of failure to supervise or failure to train." <u>See</u> <u>id.</u>
(citations omitted).

The plaintiff argues that the civil complaints attached to
the FAC support the inference that the NYPD failed to train its
officers regarding their obligations under <u>Brady</u>. The plaintiff
attached fifteen complaints all of which allege that NYPD
officers withheld evidence or gave false or misleading
testimony.[4] However, these complaints span from 1985 until 2010,

---

[4] The question whether there is a widespread custom or policy is different
from the question in a failure to train claim, which "is whether [the
plaintiff] ha[s] plausibly supported the existence of a training deficiency
and the City's awareness of the same." <u>Felix</u>, 344 F. Supp. 3d at 662.
Accordingly, although past civil rights complaints are usually insufficient

and the plaintiff has not shown similar complaints that were in close temporal proximity to the plaintiff's alleged constitutional injuries.

The plaintiff's failure to train claim is insufficiently alleged in any event because the plaintiff has failed to allege sufficient facts to show that the City was deliberately indifferent to the need to have adequate police training to avoid the submission of false or misleading repots. Ortiz v. Parkchester N. Condominium, No. 16cv9646, 2018 WL 2976011, at *8 (S.D.N.Y. June 13, 2018). Although the plaintiff makes claims such as the Police Commissioner was "deliberately indifferent" to his duty to implement sufficient training procedures, FAC ¶ 123, these allegations are conclusory and are not enough to "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ortiz, 2018 WL 2976011, at *9 ("Plaintiff's allegations fail to state more than a 'simple recitation' of Plaintiff's theory of liability."). Accordingly, the plaintiff's Monell claim based on a failure to train is **dismissed.**

---

to show a custom or policy, they can support a claim of failure to supervise or failure to train. Ortiz v. Parkchester N. Condominium, No. 16cv9646, 2018 WL 2976011, at *8 (S.D.N.Y. June 13, 2018).

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The defendants' motion for judgment on the pleadings is **granted in part and denied in part** as explained above. The Clerk is directed to close Docket Number 25.

**SO ORDERED.**

Dated:      **New York, New York**
              **September 3, 2019**      **_____/s/_____**
                                     **John G. Koeltl**
                         **United States District Judge**